IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JASON WILBERT JOHNSON,<br><br>                    Petitioner,<br><br>          vs.<br><br>RON BARNES, Acting Warden, High<br>Desert State Prison,[1]<br><br>                    Respondent. | No. 2:09-cv-02108-JKS<br><br>MEMORANDUM DECISION |

Jason Wilbert Johnson, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Johnson is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at High Desert State

Prison.  Respondent has answered, and Johnson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On June 28, 2004, Johnson was charged with attempted murder and attempted carjacking.

The information also included allegations for firearm use and infliction the following facts

underlying the charges against Johnson:

> In March 2004, 28-year-old real estate agent Zachary Alber owned a 1997 Jaguar
> XK convertible, to which he had added expensive "spinner" wheels, large rims and
> low-profile tires, a package that cost him about $6,000.
> On the evening of March 20, Alber attended a party at a friend's house in
> downtown Sacramento.  After the party, he went to a couple of nightclubs, and spent time
> with friends.  At about 2:00 a.m. on March 21, Alber headed toward the Carrows
> restaurant at 27th and J Streets.
> As he approached Carrows, Alber noticed many people and cars gathered around
> the parking lot of the AM-PM market at J and 29th Streets, so he turned in there, and

---

[1]        Ron Barnes, Acting Warden, High Desert State Prison, is substituted for
Francisco Jacquez, former Warden, Pelican Bay State Prison.  FED. R. CIV. P. 25(c).

initiated conversation with the bystanders.  During the conversation, some girls who were standing nearby mentioned that someone might want to steal his car.

Alber decided to leave the scene.  He had to maneuver his way around the parking lot, because there were so many people standing around.  As he was making a "three-point turn," he noticed a group of men standing behind him, including [Johnson].  Suddenly, he heard a person shouting at him.  In his rear-view mirror, he saw [Johnson] holding a gun.  He heard two or three shots fired.  Alber felt one shot hit the back of his head.  The bullet went through his mouth, took off a piece of his tongue and knocked out some teeth.  Another shot hit his neck, just under the collar.

With blood gushing from his mouth, Alber exited the car.  His right limbs went numb and he collapsed to the ground.  He was rushed to the hospital, where he received emergency treatment.  He suffered a stroke and was temporarily paralyzed.  Medical testimony revealed that Alber sustained a gunshot wound to the back of the neck, which severed a major artery supplying blood to the face.  He also sustained injury to the spine, the back of his mouth, his tongue and vocal cords.

Gary Walton, who witnessed the shooting, testified that the gunman took three large, strong steps toward the Jaguar, raised his arm, pointed a gun in the direction of the car and fired at least three shots.

### Defense

[Johnson] admitted that he shot Alber, but claimed it was an accident.  He testified that he had consumed two and one-half ecstasy pills and several shots of liquor by the time he arrived at the AM-PM parking lot.  When he saw Alber's Jaguar, he decided to steal it, because he wanted to sell the rims.  [Johnson] retrieved his gun from his friend's car and walked toward the Jaguar with the .380-caliber semiautomatic pistol in his coat pocket.  He pulled out the pistol and told the driver to get out.  The driver lurched forward and then backed up.  [Johnson] claimed he tried to jump back to avoid being hit and extended his hands in a defensive motion, when the gun discharged twice.

*People v. Johnson*, No. C051740, 2007 WL 3151666, at *1-2 (Cal. Ct. App. Oct. 30, 2007).

After trial, a jury convicted Johnson of attempted carjacking (count two) and found true the firearm and great bodily injury allegations.  The jury was unable to reach a unanimous verdict on the attempted murder charge, and the court declared a mistrial on that count.  The Sacramento County District Attorney's Office retried Johnson on that count and, on December 9, 2005, another jury found Johnson guilty of attempted murder and found true the allegation that

he intentionally discharged a firearm causing great bodily injury.  The trial court subsequently sentenced Johnson to an aggregate term of 32 years to life in state prison.

Through counsel, Johnson appealed his conviction, arguing that: 1) the trial court erred by limiting the questioning of prospective jurors to discern potential juror bias; 2) the prosecution pursued inconsistent and irreconcilable theories in the separate trials; 3) the trial court erred by permitting the prosecution's expert to testify on rebuttal regarding the trajectory of the bullet that injured the victim; 4) trial counsel was ineffective for failing to object to the testimony of the prosecution's firearm expert as improper rebuttal evidence; and 5) the abstract of judgment must be amended to reflect the imposition of judgment and staying of the sentence on the attempted murder count.  On October 30, 2007, the California Court of Appeal issued a reasoned, unpublished opinion ordering that the abstract of judgment be modified to correctly reflect the sentence imposed but otherwise affirming the judgment of conviction.  *Johnson*, 2007 WL 3151666, at *8.  Johnson petitioned for review in the California Supreme Court, which was summarily denied on February 13, 2008.

On July 28, 2009, Johnson filed a *pro se* Petition for a Writ of Habeas Corpus to this Court together with a motion to stay the proceedings pending exhaustion of state court remedies.  Docket Nos. 1, 3.  Respondent moved to dismiss the Petition based on timeliness grounds and failure to exhaust some claims.  Docket No. 13.

On September 13, 2010, a magistrate judge issued findings and recommendations that Respondent's motion to dismiss be denied and Johnson's motion to stay the case be granted.  Docket No. 22.  On March 2, 2011, this Court, through a previously-assigned judge, adopted in full those findings and recommendations.  Docket No. 27.  The Court stayed Johnson's case and

directed him to file a state habeas petition containing his unexhausted claims within 30 days and

to inform the Court of their exhaustion within 30 days after his claims are exhausted in state

court. *Id.*

On October 12, 2010, prior to the granting of the stay in this case, Johnson filed a petition

for a writ of habeas corpus in the California Superior Court, raising the same claims raised in the

instant Petition before this Court. The Superior Court denied each of the claims on both

procedural grounds and on the merits in a reasoned, unpublished decision issued on November

30, 2010.

On March 26, 2012, Johnson raised the same claims in a petition for writ of habeas

corpus filed in the California Court of Appeal. The Court of Appeal denied the petition on

procedural grounds, citing *In re Steele*, 85 P.3d 444, 449-50 (Cal. 2004) (requests for discovery

should be made in the lower courts in the first instance), and *In re Hillery*, 20 Cal. Rptr. 759, 760

(Cal. Ct. App. 1962) ("Generally speaking, habeas corpus proceedings involving a factual

situation should be tried in superior court rather than in an appellate court, except where only

questions of law are involved." (citation omitted)).

On August 22, 2013, Johnson again raised the same claims in a petition for a writ of

habeas corpus filed in the Supreme Court. On November 20, 2013, the petition was denied as

untimely with a citation to *In re Robbins*, 959 P.2d 311, 317, 18 Cal. 4th 770, 780 (Cal. 1998).

On April 2, 2014, this Court lifted the stay and ordered Respondent to answer the Petition.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Johnson raises five grounds for relief. First, Johnson argues that

his appellate counsel was infective for failing to investigate and raise claims. He next asserts

4

that his trial counsel was ineffective for failing to investigate and "prove an[] adequate defense."

Third, Johnson contends that the trial court erred when it allowed him to be retried for attempted

murder with a firearm enhancement in violation of the protection against double jeopardy.

Johnson additionally argues that the trial court erred when it failed to instruct the jury on lesser

included offenses.  Finally, Johnson alleges that the prosecutor committed misconduct.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      Dilatory Litigation Tactics

Respondent argues that Johnson's Petition should be dismissed with prejudiced in its entirety because Johnson "has engaged in dilatory litigation tactics."  In support of this contention, Respondent cites *Rhines v. Weber*, 544 U.S. 269 (2005), in which the United States Supreme Court held:

> Stay and abeyance, if employed too frequently, has the potential to . . . frustrate[] AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings.  It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

*Id.* at 277.

The Ninth Circuit has provided a basis upon which to dismiss a stayed action for unreasonable delay.  In holding that the trial court has discretion in granting a stay for a petition containing both unexhausted and exhausted claims, the Ninth Circuit found that 30 days to initiate state court proceedings, and 30 days to return to federal court after the final rejection of

the claims by the state court, were reasonable time limits for a district court to impose. *Kelly v. Small*, 315 F.3d 1063, 1070-71 (9th Cir. 2003), *overruled on other grounds*. Importantly, the court also held that, in the case of non-compliance with these conditions, "the stay may be vacated *nunc pro tunc* as of the date it was entered." *Id.* at 1071 (quoting *Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir. 2001)); *see also Johnson v. Girdich*, No. 03 Civ. 5086, 2005 WL 427576, at *5 (S.D.N.Y. Feb. 23, 2005) (granting respondent's motion to dismiss for untimeliness after a stay was granted for state court proceedings because petitioner returned to the court with an amended petition after the prescribed 30-day time limit imposed by the court).

In reaching this conclusion, the *Kelly* court adopted the reasoning of the Second Circuit in *Zarvela*, in which the Second Circuit noted that "a stay, unless appropriately conditioned, could permit a habeas petitioner to take an undue amount of time to pursue state court remedies." *Zarvela*, 254 F.3d at 380. The *Zarvela* court stressed that the "need for expeditious exhaustion" be impressed upon the petition. *Id.*

In this case, the record indicates that, when this Court granted Johnson's request for a stay on March 3, 2011, the state superior court had already denied a state habeas petition containing the unexhausted claims. Johnson waited more than a year after the grant of the stay to file a petition for a writ of habeas corpus in the California Court of Appeal containing the same claims. After that petition was denied on April 5, 2012, Johnson waited another 16 months before filing in the California Supreme Court an exhaustion petition containing the same claims. The state supreme court denied that petition on November 20, 2013, and Johnson notified this Court on December 26, 2013, that the claims were exhausted. The stay was lifted on April 2, 2014. The stay in this case was therefore in effect for over three years.

The lengthy and unexplained intervals between the court's grant of an abeyance and Johnson's initiation of his state court proceedings as well as the long delay between the filing of his petition to the Court of Appeal and the filing of his petition to the Supreme Court are certainly problematic as they prolong the resolution of Johnson's federal habeas proceedings—which have been pending in this Court for over 5 years.

Nevertheless, the Court does not believe that the action should be dismissed as untimely. First, Johnson has demonstrated cause for at least part of the delay.  In response to an order of this Court directing Johnson to report on the status of his state proceedings, Johnson indicated that the delay between the denial of his petition by the Court of Appeal and the filing of his petition to the Supreme Court was due to the fact that he did not receive the Court of Appeal's denial order and inadvertently mailed his state habeas petition to this Court rather than the state supreme court.

Second, the stay has already been lifted, and the case is in active status.  This case is therefore unlike the *Johnson* case cited above where the Southern District of New York dismissed the action following the petitioner's return to federal court.  *Johnson*, 2005 WL 427576, at *5.  Although the grant of abeyance in this action was expressly conditioned on time requirements that Johnson failed to meet, there is no indication that Respondent raised the issue at the time Johnson returned to federal court.  Notably, a magistrate judge of this Court exercised his discretion to re-instate the case and lift the stay.

Finally, it would be inequitable to dismiss the Petition for reasons of delay when Respondent's own actions have served to prolong the proceedings before this Court.  There is no

8

evidence in the record that, at any time during the 3-year pendency of the stay, Respondent moved to vacate the stay.

Given these reasons, the Court declines to dismiss the Petition on the sole basis of unreasonable delay.

B.      Procedural Bar

Respondent also argues Johnson's claims are procedurally barred.  The California Superior Court denied each of Johnson's claim on the procedural ground of untimeliness and held in the alternative that they failed on the merits.  In denying the same claims presented in a subsequent habeas petition, the California Supreme Court cited *In re Robbins*, 959 P.2d at 317, 18 Cal. 4th at 780, its seminal case for untimeliness.

A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *Walker v. Martin*, 562 U.S. 307, 131 S. Ct. 1120, 1127 (2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  A state prisoner seeking federal habeas relief must first exhaust the remedies available in the state courts in order to afford those courts the opportunity to address and correct alleged violations of the petitioner's federal rights. *Walker*, 131 S. Ct. at 1127 (citing *Coleman*, 501 U.S. at 731).  The "adequate and independent state ground doctrine" ensures that habeas petitioners are not able to avoid the exhaustion requirement by merely defaulting their federal claims in state court.  *Id.*

The United States Supreme Court has recognized that, when the California Supreme Court cites *Robbins*, particularly page 780 of that opinion, the state court signals "that a habeas petition is denied as untimely."  *Walker*, 131 S. Ct. at 1124; *see also Thorson v. Palmer*, 479

9

F.3d 643, 645 (9th Cir. 2007).  The Supreme Court has further instructed federal habeas courts

that a citation to *Robbins* is an independent and adequate state procedural ground requiring

denial of a subsequent federal habeas petition.  *See Walker,* 131 S. Ct. at 1125 (abrogating

*Townsend v. Knowles*, 562 F.3d 1200 (9th Cir. 2009)).  The Ninth Circuit has likewise held that

California's "substantial delay" timeliness standard satisfies the "independent and adequate"

requirement.  *See Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003).  The Ninth Circuit

has further stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may
> nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the
> claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates
> that not hearing the claim would result in a "fundamental miscarriage of justice."
> *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505
> U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).  An objective factor outside
> of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim
> that was previously unavailable) could constitute cause.  *Murray v. Carrier*, 477 U.S.
> 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467,
> 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  The petitioner can meet the prejudice
> prong if he demonstrates "that the errors . . . worked to his *actual* and substantial
> disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."
> *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456
> U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).  A petitioner can demonstrate a
> fundamental miscarriage of justice by "establish[ing] that under the probative evidence
> he has a colorable claim of factual innocence."  *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514,
> 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

Although, as previously discussed, Johnson provided reasons for a one-year delay before

filing his petition to the California Supreme Court, those reasons fail to demonstrate good cause

for Johnson's more than two-and-a-half-year delay in initiating his state court habeas

proceedings after his judgment of conviction became final.  He therefore does not demonstrate

cause for his procedural default.  Nor do the claims raised in his Petition establish a colorable

claim of factual innocence or demonstrate that injustice would result from not hearing his claim.

Accordingly, the Court agrees with Respondent that the claims asserted are procedurally

defaulted and barred from federal review and rejects his claims on that basis.

C.      Merits

In any event, even if the claims were not procedurally barred, Johnson still would not be

entitled to relief on them.  For the reasons discussed below, the Court also denies relief on the

merits of his claims.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus

may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State.").

1.      Ineffective Assistance of Counsel

Johnson first argues that both his trial counsel and appellate counsel rendered ineffective

assistance for a variety of reasons.

a.      *Strickland* Standard on Habeas Review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Johnson must show that defense counsel's representation was not within the

range of competence demanded of attorneys in criminal cases, and that there is a reasonable

probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill*

*v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make

a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697

(courts may consider either prong of the test first and need not address both prongs if the

defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold."  And,
> because the *Strickland* standard is a general standard, a state court has even more
> latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland*

claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v.*

*Gentry*, 540 U.S. 1, 5-6 (2003)).

       b.     Trial Counsel (Claim 2)

       i.     *Unqualified expert witness*

Johnson first argues that trial counsel was ineffective because he presented the testimony

of an expert who was "not qualified nor familiar with [his] case to be the basis for [Johnson's]

theory of his defense."  He complains that the witness had never previously testified as an expert

and claims that she "tainted" the entire defense when she acknowledged that she has used drugs herself.

During Johnson's second trial, Beth Hirsch, a certified drug and alcohol counselor, was called as a defense witness in support of Johnson's claim that the shooting was an accident which occurred while he was under the influence of alcohol and drugs.  Hirsch testified that she had reviewed the police reports in the case and interviewed Johnson.  She stated that, while she had never testified as an expert on the effects of drug and alcohol, she had testified as an expert on being a recovering addict based on her personal experience.  She also testified that she has taught drug education classes during the five years she has served as a counselor.  The trial court found Hirsch qualified to testify as an expert and explained to the jurors that they would decide how much weight to give her testimony.

In response to a hypothetical question, Hirsch opined that a person of Johnson's body size who had ingested 2½ tablets of the drug ecstacy in a half-hour period, along with two double shots of Hennessey (a brand of cognac) and two shots of Remy (another brand of cognac), would be intoxicated.  Hirsch also described the effects of alcohol, including impairment of cognitive function and judgment.  She testified that ecstacy has "methamphetamine-like stimulatory effects" that warp perception.  She explained that, when taken in combination with alcohol, ecstacy provides a "false sense of security" that one's motor functions are not decreased and could affect one's memory of an event.

The record of Hirsch's testimony does not support Johnson's claim that she was not familiar enough with his case to be a helpful witness for the defense.  Rather, her testimony supported Johnson's defense that he shot at the victim's car by mistake because his judgment

was impaired regarding the threat to his safety.  Nor does the record support Johnson's assertion

that Hirsch's admission that she was a former drug addict hurt her credibility.  Indeed, this

admission may have boosted her credibility on the effects of alcohol and drugs because it

demonstrated that she had first-hand experience.  Thus, the state court's determination that

Johnson failed to show ineffective assistance in this regard is both reasonable and fully

supported by the record.

ii.  <em>Failure to present a mental health expert</em>

Johnson next faults defense counsel for failing to call "an expert witness in the field of

psychiatry or mental health."  To show ineffective assistance of counsel based on the failure to

call a witness, a habeas petitioner must show: 1) a particular witness was willing to testify, *see*

*United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988); 2) what their testimony would

have been, *see United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987); and 3) that their

testimony would have been sufficient to create a reasonable doubt as to guilt, *see Tinsley v.*

*Borg*, 895 F.2d 520, 532 (9th Cir. 1990).

Here, Johnson has not set forth sufficient facts or arguments in support of his assertion.

He has not shown that, at the time of trial, a particular expert was prepared to testify, what that

expert's testimony would have been, or that the expert's testimony would have been sufficient to

create a reasonable doubt as to his guilt.  *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir.

2001) (speculation that an expert would testify on petitioner's behalf is insufficient to establish

*Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  Johnson's vague

and conclusory statement that counsel should have called an exculpatory expert witness because

he knew that Johnson had once attempted suicide and was admitted to the jail's psychiatric unit

14

following his arrest is therefore denied. *See Blackledge v. Allison*, 431 U.S. 63, 75 (1977) ("The allegations in this case were not in themselves so vague (or) conclusory as to warrant dismissal for that reason alone.") (internal citations and quotation marks omitted). Because Johnson has failed to provide a factual basis for this claim, the state court's denial of it was reasonable.

iii. *Failure to enter a plea of "once in jeopardy"*

Johnson additionally contends that trial counsel rendered ineffective assistance by failing to enter a plea of "once in jeopardy" at Johnson's second trial. In support of this claim, Johnson appears to argue that the retrial on the attempted murder was precluded because the jury found true the firearm enhancement on the attempted carjacking charge and the same enhancement was alleged in connection with the attempted murder charge in the second trial. However, as discussed with regards to claim 3, *infra*, Johnson's double jeopardy arguments are without merit. Therefore, no legal basis existed for counsel to enter a plea of "once in jeopardy" and counsel cannot be ineffective for failing to enter it. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989).

iv. *Failure to request instruction on lesser offenses*

Johnson likewise asserts that trial counsel should have requested instructions on attempted voluntary manslaughter and attempted assault with a deadly weapon as lesser-included offenses to attempted murder as well as instructions on "lesser" firearm enhancements.

Under California law, voluntary manslaughter is a lesser included offense of murder and is the unlawful killing of a human being without malice in a "sudden quarrel or heat of passion" in imperfect self-defense. CAL. PENAL CODE § 192(a); *People v. Blacksher*, 259 P.3d 370, 421 (Cal. 2011). Johnson's defense to the attempted murder charge was that he fired the gun

15

accidentally because he was startled.  There was no evidence in the record that, when Johnson

fired the gun, he was acting in the heat of passion or with the unreasonable but genuine belief in

the need for self-defense.  Because defense counsel had no legal basis or evidence to support

requesting an instruction on attempted voluntary manslaughter, counsel was not ineffective for

failing to do so.[2]  *See United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995) (holding that

defendant is only entitled to have his theory of defense explained in the jury instructions if it is

supported by law and has some basis in the evidence).

      With respect to his claim that an instruction on attempted assault with a deadly weapon

should have been given, under California law, this offense is not a lesser included offense of

murder because attempted murder does not require the elements of that offense for its

commission.  *See People v. Sanchez*, 16 P.3d 118, 120 (Cal. 2001).  Because it is not a lesser

included offense, the trial court would not have been authorized to instruct the jury on it unless

the prosecution consented.  *See People v. Birks*, 960 P.2d 1073, 1090 (Cal. 1998).  There is no

evidence in the record that the prosecution would have agreed to such an instruction, and

Johnson therefore cannot demonstrate that he was prejudiced by counsel's failure to request it.

      Similarly, Johnson cannot show that counsel was ineffective for failing to request an

instruction on "lesser" firearm enhancements.  The information charged Johnson with violating

---

[2]     The record indicates that the jury in Johnson's first trial was instructed on
attempted voluntary manslaughter as a lesser included offense to attempted murder.  The record
of the first trial does not indicate why the trial court provided such instructions.  The record of
the second trial indicates that both sides agreed "there should not be a submission on the lesser
included attempted manslaughter."  It is not clear why defense counsel did not request the
instruction in the second trial.  Even if he had, however, the record does not indicate that such
request would have been granted.  Indeed, it may be the case that the parties agreed that the
instruction had been erroneously given in the first trial.

subsections (b), (c), and (d) of California Penal Code § 12022.53.  Subsection (b) provides for an enhancement of 10 years when a defendant personally uses a firearm in the commission of a felony; subsection (c) provides for an enhancement of 20 years when a defendant personally and intentionally discharges a firearm; and subsection (d) provides for an enhancement of 25 years to life in prison when a defendant personally and intentionally discharges a firearm causing great bodily injury.  *See* CAL. PENAL CODE § 12022.53(b), (c), (d).

At the first trial, the jury was given the option of convicting Johnson under any of those options with regard to both the attempted murder and attempted carjacking charges.  In finding Johnson guilty of attempted carjacking, the first jury also found true the allegation that Johnson personally used a firearm in violation of Penal Code § 12022.53(b).  That finding was consistent with the jury's failure to reach a unanimous verdict on the attempted murder charge, which required a finding of intent to kill, because subsection (b) does not contain a specific intent requirement.  Given the result of the first trial, counsel reasonably may have believed that the jury in the second trial would be less likely to convict Johnson of the firearm use enhancement if it did not have multiple options for the firearm enhancement and could either convict or not convict him of § 12022.53(d).  *See Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984) (holding that counsel's failure to request a lesser included instruction did not constitute ineffective assistance when the decision was a tactical one to force the jury to convict of the charge or acquit outright).

Moreover, Johnson cannot show prejudice because, even if counsel had requested that the jury be instructed on the "lesser included enhancements" of § 12022.53(b) or (c), it is unlikely that the jury would have opted for either of them.  Because the jury found Johnson guilty of

17

attempted murder, it necessarily found that he intended to fire the gun.  The undisputed evidence at trial also established that the victim suffered great bodily injury in that he was hospitalized for over a month and walked with a limp nearly two years after the injury.  It therefore appears that, even if the jury also had been presented with the options of § 12022.53(b) and (c), it nonetheless would have found true § 12022.53(d).

v.      *Failure to call Anthony Nash*

Finally, Johnson argues that counsel should have called Anthony Nash as a witness in both of his trials.  Johnson contends that Nash "gave a completely different account" than that provided by Gary Walton, who testified for the prosecution.  Johnson alleges that he would have received a more favorable result if Nash had been called as a witness.

Johnson did not provide any evidentiary support when he presented this claim in his habeas petitions to the California Superior Court and California Supreme Court.  Thus, the Superior Court denied the claim because it was unaccompanied by an affidavit from Nash stating how he would have testified at trial.  In his Petition before this Court, Johnson submitted a written summary by a Sacramento County District Attorney investigator of a telephone interview with Nash on August 30, 2005, between the first and second trials.  Because Johnson failed to present this evidence to the state court, this Court is precluded from considering it.  *See Cullen v. Pinholster*, 131 S.Ct 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Even if the Court could consider it, however, the investigator's report does not show that counsel was ineffective for failing to call Nash as a witness.  Nash's statement to the investigator indicates that he did not see anything prior to the shooting; rather, he only heard some shots and

saw the aftermath.  Thus, even if Nash had testified consistent with his statement, such testimony would not have contradicted Walton's testimony that he saw a person in the crowd raise up his arm while holding a gun, walk toward a convertible car, and fire multiple shots at the vehicle while standing about a foot away from it.  Notably, Nash's statement does not provide support for Johnson's defense that he fired the gun accidentally after the vehicle made a sudden movement toward him.  Accordingly, Johnson cannot establish that counsel was deficient in failing to call Nash as a witness or that he was prejudiced by that omission.

        c.     Appellate Counsel (Claim 1)

Johnson also claims that appellate counsel was ineffective for failing to argue on appeal that trial counsel rendered ineffective assistance for the reasons above.  For the reasons previously discussed, however, those claims are without merit.  As such, appellate counsel was not deficient in failing to raise them on direct appeal, and Johnson cannot show that he was prejudiced as a result.  Johnson therefore cannot prevail on any of his ineffective assistance of counsel claims.

        2.     Double Jeopardy (Claim 3)

Johnson next claims that his protection against double jeopardy was violated when the trial court allowed him to be retried for attempted murder with a firearm enhancement.  He contends that the jury's verdict on the same enhancement in connection with the attempted kidnapping charge in the first trial precluded a retrial with the same enhancement attached to the attempted murder charge.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense," but "does not offer a guarantee to the

defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 671-72 (1982) (footnote omitted). The Double Jeopardy Clause bars successive prosecutions on charges of which a criminal defendant has been acquitted or convicted. *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006). It also bars successive prosecutions on an offense not charged in the original indictment once jeopardy has terminated for a lesser included or greater inclusive offense. *Brown v. Ohio*, 432 U.S. 161, 166 (1977); *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004). However, the principle of double jeopardy protection following an acquittal generally[3] does not apply as a bar to a second prosecution where the trial court declares a mistrial because the jury could not reach a unanimous verdict. *Hoyle v. Ada County*, 501 F.3d 1053, 1060 (9th Cir. 2007); *see Richardson v. United States*, 468 U.S. 317, 324 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause.").

Here, Johnson's first trial resulted in a partial conviction, and a mistrial was declared as to the attempted murder charge. During the second trial, Johnson was tried on the attempted murder charge but was not tried again on the attempted carjacking offense of which he had already been convicted. However, each offense carried with it an enhancement allegation for use of a firearm causing great injury. Johnson claims that the retrial on the enhancement charge (as attached to the attempted murder charge) violated the Double Jeopardy Clause.

---

[3]     Double jeopardy protection may be invoked after a mistrial in certain circumstances, none of which are applicable here. *See United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality opinion) (double jeopardy protects defendants against governmental actions intended to provoke mistrial requests); *see also United States v. Dinitz*, 424 U.S. 600, 611 (1976) (double jeopardy bars retrials caused by certain bad-faith conduct by a judge or prosecutor).

His claim fails, however, because California's sentencing enhancements do not qualify as offenses under the Double Jeopardy Clause. *See May v. Summer*, 622 F.2d 997, 999 (9th Cir. 1980); *see also Monge v. California*, 524 U.S. 721, 734 (1998) ("[T]he Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context."). Johnson does not cite, and this Court is not aware of any, authority of the United States Supreme Court holding that a jury's true finding on an enhancement for a certain offense prohibits the prosecution from alleging the same conduct as a the basis for an enhancement for another offense in a second trial. Rather, because a sentence enhancement is not an offense for purposes of double jeopardy, the Supreme Court has rejected double jeopardy challenges in similar contexts. *See Monge*, 524 U.S. at 734; *Witte v. United States*, 515 U.S. 389, 396-97 (1995) (Double Jeopardy Clause did not bar prosecution for conduct that provided the basis for an enhancement of the defendant's sentence in a prior case); *Williams v. Oklahoma*, 358 U.S. 576, 584-85 (1959) (holding that "evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limit does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause").

Accordingly, Johnson is not entitled to relief on his double jeopardy claim.

3.      Instructional Error (Claim 4)

Johnson additionally contends that his constitutional rights to present a complete defense and to due process were violated by the trial court's failure to *sua sponte* instruct the jury on the

lesser included offense of attempted voluntary manslaughter, the lesser related offense of assault with a deadly weapon, and two "lesser" firearm enhancements.[4]

With respect to his claim that the trial court should have instructed the jury on the lesser included offense of attempted voluntary manslaughter, the United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases. The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). Accordingly, the decision of the California courts denying Johnson relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*.

In addition to the possibility of demonstrating a due process violation based on the failure to instruct on a theory of the defense, clearly established federal law provides that, in order to

---

[4]       A lesser related offense is one with elements different from the charged offense but which bear a relationship to the charged offense. *See Hopkins v. Reeves*, 524 U.S. 88, 98 (1998). A lesser included offense is an offense whose elements are a subset of the elements of the charged offense. *See United States v. Rivera-Alonzo*, 584 F.3d 829, 832 (9th Cir. 2009).

establish a violation of his federal due process rights by the failure to give a requested jury

instruction, Johnson must demonstrate that the instruction should have been given, and that its

omission "so infected the entire trial that the resulting conviction violates due process."

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147

(1973)).  Where failure to give an instruction is in issue, the burden on the petitioner is

"especially heavy."  *Kibbe*, 431 U.S. 155.  Moreover, even if the trial court's failure to give the

instruction violated due process, habeas relief would still not be available unless the error had a

"substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

Johnson has not carried his heavy burden of showing that the instruction should have

been given because, as the Superior Court found in rejecting Johnson's corresponding claim of

ineffective assistance of counsel, "there is no duty to instruct on attempted voluntary

manslaughter as a lesser offense of attempted murder when there is no evidence of heat of

passion or sudden quarrel or intent to kill."  Additionally, even assuming an instructional error

occurred, the Court finds that Johnson has failed to establish that such an error was harmful.

Under the circumstances presented in this case, it is clear that the failure to instruct in this regard

could not have had any adverse effect whatsoever on the jury's decision, much less the

"substantial and injurious effect" required to show the error was harmful.  *Brecht*, 507 U.S. at

637; *Roy*, 519 U.S. at 5.  Johnson is therefore not entitled to relief on this claim.

Johnson's other instructional error claims fare no better.  With respect to his claim that

the trial court should have *sua sponte* instructed on the lesser related offense of assault with a

deadly weapon, the United States Supreme Court has explicitly held that there is no

constitutional right to jury instructions on lesser related offenses.  *See Hopkins*, 524 U.S. at 97-

98.  Likewise, no Supreme Court authority mandates that, when a sentencing enhancement is

alleged, a state court is required to instruct on all lesser degree enhancements.  Accordingly,

Johnson cannot prevail on any of his instruction error claims.

4.      Prosecutorial Misconduct (Claim 5)

Finally, Johnson alleges that the prosecutor committed misconduct by 1) trying him in

two separate trials; 2) misstating the law in his closing argument during the first trial by advising

the jury that attempted manslaughter is tantamount to attempted murder; 3) relitigating the

firearm enhancement after the jury in the first trial found that Johnson's discharge of the gun was

not intentional; 4) requesting that the defense's juror questionnaire, which had been used in the

first trial, not be used for voir dire in the second trial; and 5) removing all lesser included

offenses and lesser enhancements from the second trial.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue

of whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477 U.S.

168, 181 (1986).  To prevail on such a claim, a petitioner must show that the prosecutor's

conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due

process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Moreover, "[o]n habeas

review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief

only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'"

*Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38 (1993)).

Johnson fails to satisfy this standard.  First, Johnson's claim that the prosecutor "took one

continuous course of conduct and made into separate offenses by use of divide and conquer

tactics, forcing [Johnson] to run the gaun[t]let of charges he'd already faced" is without merit. As previously discussed, Johnson was retried for attempted murder only because the jury in his first trial deadlocked on that charge, and the retrial thus did not violate the Double Jeopardy Clause.  Johnson therefore cannot show that the prosecutor's decision opting to retry Johnson on that count violated due process.

Second, Johnson cannot show that the prosecutor's misstatement of law violated his constitutional rights because the jury that heard the argument did not convict Johnson of attempted murder; rather, Johnson was convicted by a separate jury that heard a different argument with no reference to the crime of attempted voluntary manslaughter.  In light of these circumstances, the state court's ruling that the error was harmless was entirely reasonable. Furthermore, Johnson fails to show that an error in the first trial had a substantial and injurious effect or influence on the outcome of Johnson's second trial.  Any possible error was therefore harmless for purposes of habeas review as well.

Third, Johnson's claim that the prosecutor was collaterally estopped from refiling the firearm enhancement charge in the retrial also fails because the jury in the first trial was deadlocked on the attempted murder charge.  As previously discussed, under California law, an enhancement does not exist apart from an offense and therefore can be alleged in connection with different offenses without offending double jeopardy protections.  Because the jury in Johnson's first trial did not reach a verdict on the attempted murder charge, it did not make any findings on the associated firearm enhancement.  *See People v. Majors*, 956 P.2d 1137, 1154 (Cal. 1998) (a jury does not consider enhancements unless it has already convicted the defendant of the underlying substantive offenses).  The prosecutor was thus not estopped from re-alleging

25

that Johnson intentionally discharged a firearm causing great bodily injury in the commission of attempted murder.  Because the retrial was permissible, Johnson cannot show it violated his due process rights.

Fourth, Johnson's claim of prosecutorial misconduct in connection with the jury questionnaire rests on the premise that he had a due process right to use that questionnaire during voir dire in the retrial.  As the Court of Appeal ruled, "[Johnson's] argument is flawed at the outset because there is no constitutional right to a particular manner of selecting a jury." *Johnson*, 2007 WL 3151666, at *2.  Johnson cannot point to any authority of the United States Supreme Court to the contrary.  The state court's denial of this claim is therefore fully consistent with federal law.

Finally, Johnson cannot prevail on his claim that the prosecutor committed misconduct when he "removed all lesser-included offenses in [Johnson's] second trial intentionally to receive  a more favorable verdict."  As an initial matter, the record does not support Johnson's claim that the prosecutor "removed" these offenses from the jury's consideration but rather shows that "both sides agree[d]" that the jury in the second trial would not be instructed on voluntary manslaughter.  Even if Johnson could show that the prosecutor wrongfully prevented the trial court from instructing the jury on the lesser offenses, as discussed above, Johnson had no right to have the jury consider the lesser offenses and enhancements.  Johnson therefore cannot show that the state court's denial of this claim was unreasonable.

In sum, Johnson has failed to demonstrate that the prosecutor committed misconduct in any respect.  He therefore is not entitled to relief on any argument advanced in support of this claim.

## V. CONCLUSION AND ORDER

Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 16, 2014.

      /s/James K. Singleton, Jr.      
       JAMES K. SINGLETON, JR.
       Senior United States District Judge

27